ROBERT M. SUSSMAN
SUSSMAN & ASSOCIATES
3101 Garfield Street, NW
Washington, DC 20008
(202) 716-0118
Email:  bobsussman1@comcast.net

RICHARD TOSHIYUKI DRURY (Cal. Bar No. 163559)
LOZEAU DRURY LLP
1939 Harrison Street, Suite 150
Oakland, CA  95612
(510) 836-4200
Email: Richard@LozeauDrury.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
AT SAN FRANCISCO

| | |
|---|---|
| ASBESTOS DISEASE AWARENESS ORGANIZATION, AMERICAN PUBLIC HEALTH ASSOCIATION, CENTER FOR ENVIRONMENTAL HEALTH, ENVIRONMENTAL INFORMATION CENTER, SAFER CHEMICALS HEALTHY FAMILIES - A PROGRAM OF TOXIC-FREE FUTURE, VERMONT PUBLIC INTEREST RESEARCH GROUP,  BARRY CASTLEMAN, SCD, ARTHUR FRANK, MD, PHD, RAJA FLORES, MD, PHILIP LANDRIGAN, MD, MSC, RICHARD LEMEN, PHD, MSPH, CELESTE MONFORTON, DRPH, MPH<br><br>             Plaintiffs,<br>       vs.<br><br>MICHAEL REGAN, as Administrator of the United States Environmental Protection Agency, and the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY<br><br>             Defendants. | Civil Action No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs, Asbestos Disease Awareness Organization, American Public Health Association, Center for Environmental Health, Environmental Information Association, Safer Chemicals Healthy

1

Families - A Program of Toxic-Free Future, Vermont Public Interest Research Group, Barry Castleman, ScD, Raja Flores, MD, Arthur Frank, MD, PhD, Phillip Landrigan, MD, MSc, Richard Lemen, PhD, MSPH, and Celeste Monforton, DrPH, MPH (Plaintiffs), as and for their Complaint, allege as follows against Defendants Michael Regan, as Administrator of the Environmental Protection Agency (EPA), and the EPA:

## INTRODUCTORY STATEMENT

1. Plaintiffs are nonprofit public health and environmental organizations and distinguished asbestos experts and physicians committed to addressing the serious risk of cancer and disease that asbestos continues to pose to the US population. This suit is filed under section 20(a)(2) of the Toxic Substances Control Act (TSCA) to compel defendants Michael Regan and EPA to perform their non-discretionary duty to address the use and disposal of "legacy" asbestos in EPA's risk evaluation for asbestos under TSCA section 6(b).

2. Asbestos is imported in bulk and as part of several asbestos-containing products. In addition to these ongoing commercial uses, asbestos was widely distributed and sold for several decades as part of construction materials such as attic insulation, pipes, boilers, floor tiles, gaskets, shingles, siding and roofing. These asbestos-containing building materials remain in use in millions of structures across the US, including schools, factories, public buildings, commercial businesses, apartment buildings and residences.

3. When it began its asbestos risk evaluation under TSCA in 2016, EPA claimed that the risks of legacy asbestos to workers, consumers, school children and teachers were beyond its authority under the law. As a result, it excluded legacy asbestos from its risk evaluation. However, in its November 14, 2019 decision, the U.S. Court of Appeals for the Ninth Circuit held that the ongoing use and disposal of chemicals no longer distributed in commerce are "conditions of use" as defined in section 3(4) of TSCA and must be included in TSCA risk evaluations.

4.     EPA issued its final risk evaluation (FRE) for asbestos on December 30, 2020. However, the FRE did not address the health impacts of legacy asbestos uses and associated disposal as required by the Ninth Circuit. The Agency stated its intent to conduct a future "Part 2" evaluation focused on legacy asbestos but provided no specifics about how it would be conducted and failed to set a schedule for completing it.

5.     TSCA directed EPA to complete its asbestos evaluation by June 19, 2020. Because the asbestos evaluation was required to assess the risks to human health of the use and disposal of legacy asbestos under TSCA as construed by the Ninth Circuit, EPA failed to meet this deadline. Accordingly, defendants are in violation of a non-discretionary duty under section 20(a)(2) and the Court must issue an order setting a deadline for carrying out this duty.

## JURISDICTION AND VENUE

6.     This action is brought under section 20(a)(2) of TSCA, 15 U.S.C. § 2619(a)(2), which provides that any person may commence a civil action against the Administrator "to compel [him] to perform any act or duty under this Act which is not discretionary."

7.     Suits under section 20(a)(2) may be brought in the district court where the plaintiff is domiciled and may be filed 60 days after the plaintiff has "given notice to the Administrator of the alleged failure of [his] alleged failure to perform an act or duty which is the basis for such action."

8.     Plaintiffs gave notice to defendants of their failure to discharge a mandatory duty on January 26, 2021 received no response.

9.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §2619(a)(2).

10.    This Court has the authority to grant the requested declaratory and injunctive relief under 28 U.S.C. §§ 2201-2202 and 15 U.S.C. §2619(a)(2).

11.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(e)(1)(C) and 15 U.S.C. §2619(a)(2) because plaintiff CEH is domiciled in this District.

# PARTIES

12. Founded in 2004, plaintiff Asbestos Disease Awareness Organization (ADAO), an independent 504(c)(3) non-profit organization, has spent over a decade working to prevent asbestos-caused diseases. ADAO works nationally and internationally with the leading scientists, medical doctors, industrial hygiene specialists, legislators and community advocates to protect public health and our environment. As a leader in education, ADAO hosts an annual international academic conference, now in its 16th year, to promote scientific advances in the treatment and cure of asbestos disease and advocate for the elimination of all asbestos exposures throughout the world. ADAO has been involved in efforts related to TSCA reform and the passage of the Frank Lautenberg Chemical Safety for the Twenty First Century Act for over a decade. ADAO is based in Redondo Beach, California.

13. Plaintiff America Public Health Association (APHA) champions the health of all people and all communities, strengthens the profession of public health, shares the latest research and information, promotes best practices, and advocates for public health policies grounded in research. APHA represents over 20,000 individual members and is the only organization that combines a nearly 150-year perspective and a broad-based member community with an interest in improving the public's health. APHA has long advocated for policies to protect the public from exposure to harmful chemicals and other hazardous substances, including asbestos. APHA is based in Washington DC.

14. Plaintiff Center for Environmental Health (CEH) is a non-profit organization working to protect children and families from harmful chemicals in air, food, water and in everyday products. Its vision and mission are a world where everyone lives, works, learns and plays in a healthy environment; it protects people from toxic chemicals by working with communities, businesses, and the government to demand and support business practices that are safe for human health and the environment. CEH is headquartered in Oakland, California.

15. Plaintiff Environmental Information Association (EIA) collects, generates and

disseminates information concerning environmental and occupational health hazards in the built environment to property owners and operators, interested professionals and the public. EIA members are companies, organizations and persons involved in the remediation of environmental hazards from buildings and facilities, including contractors, consultants, laboratories, training providers, regulators, equipment suppliers, owners and managers. Many EIA members are engaged in remediation of asbestos in buildings and EIA has a significant interest in a full evaluation of the health risks from use and disposal of legacy asbestos. EIA is headquartered in Chevy Chase, Maryland.

16. Plaintiff Vermont Public Interest Research Group (VPIRG) is a tax-exempt, nonprofit membership organization that is incorporated under the laws of the State of Vermont. VPIRG was established in 1972 and is Vermont's largest environmental and consumer advocacy organization. VPIRG has approximately 55,000 members and supporters throughout Vermont who have been active with the organization. VPIRG's mission is to promote and protect the health and well-being of Vermont's environment, people, and locally based economy by informing and mobilizing citizens statewide. Ensuring the proper regulation of toxic chemicals in Vermont falls well within this mission.

17. Plaintiff Safer Chemicals, Healthy Families (SCHF) fights for strong chemical policy, works with retailers to phase out hazardous chemicals and transform the marketplace, and educates the public about ways to protect our families from toxic chemicals. SCHF leads a coalition of 450 organizations and businesses united by a common concern about toxic chemicals in their homes, places of work, and products we use every day. SCHF is based in Washington DC.

18. Plaintiff Barry Castleman, ScD is an Environmental Consultant trained in chemical and environmental engineering. He holds a Doctor of Science degree from the Johns Hopkins School of Public Health. He has been a consultant to numerous agencies of the US government and other governments, international bodies, and environmental groups dealing with a wide range of public health issues. He has testified as an expert in civil litigation in the US on the history of asbestos as a public health problem and

the reasons for failure to properly control asbestos hazards. Dr. Castleman has spent the past 40 years working on asbestos as a public health problem.

19.     Plaintiff Raja Flores, MD, is the Chairman for the Department of Thoracic Surgery at Mt. Sinai Medical Center and ADAO Science Advisory Board Co-Chair Member. Raja is a recognized leader in the field of thoracic surgery for his pioneering efforts in the treatment of mesothelioma. Dr. Flores' research interests include numerous past projects relating to the multimodality management of malignant pleural mesothelioma. He helped pioneer the use of intraoperative chemotherapy for mesothelioma, and led a multi-center trial designed to improve patient outcomes. He changed the surgical management of pleural mesothelioma cancer with a landmark study comparing extrapleural pneumonectomy and pleurectomy/decortication. An expert in his field, Dr. Flores has appeared on many national and local television news reports to discuss mesothelioma. With over 250 related publications to date, his energies and commitment to the plight of mesothelioma patients remains paramount.

20.     Plaintiff Arthur L. Frank, MD, PhD, is a physician board certified in both internal medicine and occupational medicine and currently serves as Professor of Public Health and Chair Emeritus of the Department of Environmental and Occupational Health at the Drexel University School of Public Health in Philadelphia. He is also a Professor of Medicine (Pulmonary) at the Drexel College of Medicine. He also holds a position at Drexel as Professor of Civil, Architectural and Environmental Engineering. A life-long academic, Dr. Frank has previously taught at Mount Sinai, the University of Kentucky and in the University of Texas System. He has served many governmental agencies in the US and has carried out research and has been a governmental advisor internationally. Trained in both occupational medicine and internal medicine, Dr. Frank has been interested in the health hazards of asbestos for more than 35 years. He has published a great deal of work on the hazards of asbestos, and clinically cared for asbestos affected patients. He has lectured internationally about the problems of asbestos, and worked in many settings looking at the diseases caused by this material. His research interests have been in the areas of occupational cancers and occupational lung diseases, as well as agricultural safety and health. For thirty-

seven years he held a commission in the U S Public Health Service (active and inactive) and served on active duty both at the NIH and at NIOSH. Arthur is the ADAO Science Advisory Board Co-Chair.

21. Plaintiff Philip J. Landrigan, MD, MSc is a pediatrician and epidemiologist who directs the Program for Global Public Health and the Common Good and the Global Observatory on Pollution and Health at Boston College. For four decades, Dr. Landrigan has undertaken research elucidating connections between the environment and human health and translated this research into disease prevention policies. Dr. Landrigan was a Professor at the Icahn School of Medicine at Mount Sinai in New York from 1985 to 2018, where he served as Chairman of Preventive Medicine and Dean for Global Health. From 2015-2018, Dr. Landrigan co-chaired The Lancet Commission on Pollution and Health. This Commission found that pollution is responsible for 9 million premature deaths each year and for enormous economic losses.  Dr. Landrigan served on active duty in the US Public Health Service from 1970 to 1985 and in the Medical Corps of the United States Naval Reserve from 1996 to 2005.

22. Plaintiff Richard Lemen, PhD, MSPH, is a retired Assistant Surgeon General of the United States and also served as the Acting Director and the Deputy Director of the National Institute for Occupational Safety and Health before his retirement. He has been a practicing epidemiologist for more than forty years, and has taught graduate level courses on environmental and occupational health issues, including asbestos, at the Rollins School of Public Health at Emory University. He has also testified on behalf of asbestos victims; Dr. Lemen is a world-renowned author, speaker, and lecturer on this topic.

23. Plaintiff Celeste Monforton, DrPH, MPH, ADAO Prevention and Scientific Advisory Board Liaison is a lecturer in public health at Texas State University. Her research includes assessment of worker health and safety laws and policies, and their effectiveness in protecting workers from illnesses, disability and death.  She has published articles on strategies used by economic interests, including the asbestos industry, to manipulate scientific evidence to create uncertainty about health risks in order to delay protective regulatory action and compensation.  Prior to her academic appointment, Dr. Monforton was a federal employee at the U.S. Department of Labor's Occupational Safety and Health Administration

(OSHA, 1991-1995) and Mine Safety and Health Administration (MSHA, 1996-2001). Dr. Monforton served on the special panels appointed by the West Virginia Governor to investigate the January 2006 Sago coal mine disaster that took the lives of 12 workers, and the April 2010 disaster at Massey Energy's Upper Big Branch mine that killed 29 workers. Dr. Monforton is an active member of the American Public Health Association, and serves in a leadership position with the organization's Occupational Health and Safety Section.

24. Defendant Michael Regan, named in his official capacity as Administrator of EPA, has authority for the implementation of TSCA and is responsible for assuring that the Agency exercises its responsibilities under TSCA in compliance with the law.

25. Defendant EPA is an agency of the United States Executive Branch and, under the direction of Administrator Regan is charged with implementing the provisions of TSCA.

## STATUTORY BACKGROUND

26. TSCA was enacted in 1976 to create a national program for assessing and managing the risks of chemicals to human health and the environment. Among the goals stated in TSCA section 2(b), 15 U.S.C. §2601(b), are that: (1) "adequate information should be developed with respect to the effect of chemical substances and mixtures on health and the environment" and (2) "adequate authority should exist to regulate chemical substances and mixtures which present an unreasonable risk of injury to health or the environment."

27. Despite the high hopes of Congress for effective action, progress in regulating unsafe chemicals under the 1976 law was disappointing. A major setback involved EPA's unsuccessful efforts to protect against the dangers of asbestos. In 1989, the Agency issued a rule under section 6(a) of TSCA prohibiting manufacture, importation, processing or distribution in commerce of asbestos in almost all products based on a determination that they presented an "unreasonable risk of injury" under TSCA section 6. However, the Fifth Circuit Court of Appeals overturned the ban in 1991 because EPA had

failed to clear several difficult analytical hurdles in the law. *Corrosion Proof Fittings v. EPA*, 947 F.2d 1201 (5th Cir. 1991).

28. Over time, the asbestos court decision became the poster child for the inability of TSCA to support meaningful action on unsafe chemicals. After a multi-year effort to overhaul and strengthen its key provisions, TSCA was amended by the Frank R. Lautenberg Chemical Safety for the 21st Century Act ("LCSA"), which took effect on June 11, 2016.

29. These TSCA amendments enhance the chemical regulatory authorities in section 6 by establishing a new integrated process for (1) prioritizing chemicals, (2) conducting risk evaluations on high- priority chemicals and (3) promulgating rules under section 6(a) to eliminate unreasonable risks identified in risk evaluations. Congress set strict deadlines for each of these steps and directed EPA to address a minimum number of chemicals by these deadlines. It also removed the impediments to effective regulation created by the *Corrosion Proof Fittings* decision by eliminating any consideration of costs and other non-risk factors in determining whether chemicals present an unreasonable risk of injury and directing EPA to impose requirements "necessary so that the chemical no longer presents such [unreasonable] risk."

30. TSCA section 6(b)(4)(A) provides that the "Administrator *shall* conduct risk evaluations . . . to determine whether a chemical substance presents an unreasonable risk of injury to health or the environment . . . *under the conditions of use*" (emphasis added).

31. Under TSCA section 3(4), the term "conditions of use" means "the circumstances, as determined by the Administrator, under which a chemical substance is intended, known, or reasonably foreseen to be manufactured, processed, distributed in commerce, used, or disposed of."

32. Section 6(b)(4)(G) of TSCA provides that EPA "*shall* complete a risk evaluation . . . not later than 3 years after the date on which [it] initiates the risk evaluation" (emphasis added). The Agency "may extend the deadline for a risk evaluation for not more than 6 months."

9
COMPLAINT

**THE DEADLY PROPERTIES OF ASBESTOS**

33. The International Agency for Research on Cancer (IARC),[1] the National Toxicology Program (NTP),[2] the Occupational Safety and Health Administration (OSHA"),[3] the National Institute for Occupational Safety and Health (NIOSH),[4] the World Health Organization (WHO)[5] and a number of other regulatory and public health bodies recognized asbestos as a human carcinogen decades ago.

34. In its most recent monograph on asbestos published in 2012, IARC found the following cancers in humans to be causally related to asbestos exposure: lung cancer, malignant mesothelioma, ovarian cancer, and cancer of the larynx.[6] There is considerable evidence in the scientific literature of causal associations with gastro-intestinal cancers and kidney cancer. Non-malignant diseases are also caused by asbestos. These include asbestosis and asbestos-related pleural thickening.[7]

35. All fiber types in commercial use have been linked causally with each of these diseases and are regulated accordingly by OSHA and other government agencies.

36. Despite the voluntary elimination of many asbestos products, the death toll from asbestos exposure remains high and is increasing. In 2018, Dr. Jukka Takala DSc, MSc, BSC, President of the International Commission of Occupational Health ("ICOH"), reported a significant increase in previous estimates of asbestos-related deaths. According to Dr. Takala's recently published research, asbestos-

---

[1] "IARC Monographs—Arsenic, Metals, Fibres, and Dusts, Volume 100 C. A Reviews of Human Carcinogens," in "IARC Monographs on the Evaluation of Carcinogenic Risks to Humans. International Agency for Research on Cancer, World Health Organization.," International Agency for Research on Cancer2012, Available: http://monographs.iarc.fr/ENG/Monographs/vol100C/mono100C.pdf.
[2] National Toxicology Program (NTP). Asbestos. Report on Carcinogens, Fourteenth Edition. US DHHS, 2016.
[3] Occupational Safety and Health Administration (OSHA). Occupational exposure to asbestos. Final rule. 29 CFR Parts 1910, et al. Federal Register, August 10, 1994.
[4] National Institute for Occupational Safety and Health (NIOSH). Asbestos fibers and other elongate mineral particles: state of the science and roadmap for research. Current Intelligence Bulletin 62. US DHHS, 2011.
[5] WHO. International Agency for Research on Cancer (IARC) Monograph. Asbestos (chrysotile, amosite, crocidolite, tremolite, actinolite, and anthophyllite). Vol 100C, 2012.
[6] "Elimination of asbestos-related diseases," World Health Organization Geneva2014, Available: http://www.who.int/ipcs/assessment/public_health/Elimination_asbestosrelated_diseases_EN.pdf?ua=1.
[7] Dr. L. Christine Oliver, The Threat to Health Posed by Asbestos in the 21st Century in the United States, March 29, 2018, EPA-HQ-OPPT-2016-0736-0124

related diseases cause 39,275 deaths in the United States annually - more than double the previous estimates of 15,000 per year.[8]

## PUBLIC HEALTH IMPACT OF LEGACY ASBESTOS

37. A wide range of asbestos-containing products—including attic and wall insulation, pipes and boilers, floor tiles, gaskets, roofing, shingles and siding and brake pads and linings—were distributed in commerce for several decades during the 20th century. Although sales started declining in the 1980s, these products were heavily used over several decades in constructing homes, schools, apartments, public buildings, offices, stores, and factories, remaining in place today in millions of structures across the country.

38. Due to an aging infrastructure, friable asbestos is can be released into the air when disturbed during routine building maintenance and upkeep. Exposure can also occur when building materials are broken or torn apart during renovation, repair and demolition projects and the collection and removal of construction debris.

39. The incidence of asbestos-related disease is elevated in populations with exposure to legacy asbestos. A study by NIOSH researchers examined cancer incidence and mortality among firefighters in San Francisco, Chicago, and Philadelphia and found that "the population of firefighters in the study had a rate of mesothelioma two times greater than the rate in the U.S. population as a whole."[9] Studies have also found that schoolteachers, particularly in elementary and middle schools, are at higher risk of mesothelioma than the general population, due to the widespread presence of asbestos in schools built in the 1960s and 1970s and their poor record of asbestos abatement.[10] While OSHA standards apply to worker exposure to legacy asbestos, OSHA has recognized that these standards do not eliminate significant occupational risks. Another source of widespread exposure is asbestos-containing debris that

---

[8] S. Furuya, O. Chimed-Ochir, K. Takahashi, A. David, and J. Takala, "Global Asbestos Disaster," International Journal of Environmental Research and Public Health, vol. 15, no. 5, p. 15, 2018.
[9] R. D. Daniels *et al.*, "Mortality and cancer incidence in a pooled cohort of US firefighters from San Francisco, Chicago and Philadelphia (1950-2009)," *Occupational and Environmental Medicine,* vol. 71, no. 6, pp. 388-397, Jun 2014.
[10] https://www.inquirer.com/education/a/mesothelioma-philadelphia-school-district-lea-dirusso-cancer-20191121.html

enters waste streams during building renovation and demolition. Asbestos waste continues to be generated and managed in the U.S. in significant quantities. According to reports submitted for the EPA Toxic Release Inventory (TRI) in 2017, total asbestos releases for 2017 were 20,556,023 pounds, the bulk of which (92.8%) were on-site land releases.[11] Because of limitations in the scope of TRI reporting, the quantity of asbestos waste generated is probably much larger. The movement of asbestos waste in commerce and poor waste management at landfills and construction sites are a significant danger to workers and the public.

## EPA ACTIONS ON ASBESTOS UNDER TSCA

40. TSCA section 6(b)(2)(A) requires EPA to initiate risk evaluations on 10 chemical substances within 180 days of the enactment of 2016 TSCA amendments.

41. TSCA section 6(b)(2)(A) requires EPA to select 10 chemicals to undergo risk evaluations and to initiate these evaluations within 180 days of the enactment of the amended law.

42. These 10 chemicals, announced by EPA in December 2016, included asbestos. 81 Federal Register 91927 (December 19, 2016).

43. As EPA began work on the 10 chemicals, it issued a "framework" rule in July 2017 establishing the approach it would follow in conducting risk evaluations. The preamble to the rule stated that EPA did not consider "legacy activities"—consisting of "legacy uses," "associated disposals," and "legacy disposals"—to be TSCA conditions of use. 82 Fed. Reg. 33726, 33729–30 (July 20, 2017). It defined the term "legacy uses" as "the circumstances associated with activities that do not reflect ongoing or prospective manufacturing, processing, or distribution." Id.

44. EPA relied on this interpretation to exclude legacy activities from its asbestos risk evaluation. In its June 2017 scoping document, EPA stated that, "[i]n the case of asbestos, legacy uses and associated and legacy disposals will be excluded from the scope of the risk evaluation."

---

[11] https://www.epa.gov/sites/production/files/2020-02/documents/2017_toxics_release_inventory_national_analysis_complete_report.pdf#:~:text=%20%20%20Title%20%20%202017%20Toxics,Created%20Date%20%20%202/26/2019%205:31:05%20PM.

45. EPA reaffirmed this exclusion in its May 2018 problem formulation for asbestos, explaining that it would not address "pre-existing materials currently in place within buildings (e.g., insulation materials, flooring, etc.) and also within pre-existing non-building equipment" because "[t]hese materials were installed in the past, and there is no evidence to suggest that manufacturing, processing, or distribution for such activities is intended, known, or reasonably foreseen."

46. In its November 14, 2019 decision, the Court of Appeals for the Ninth Circuit held "that EPA's exclusion of legacy uses and associated disposals contradicts TSCA's plain language." *Safer Chemicals, Healthy Families v USEPA*, 943 F.3d 397, 421 (9th Cir. 2019). As it explained:

> "EPA's contention that TSCA can reasonably be read to refer to the future use of a product, and disposals associated with such use, *only* when the product will also be manufactured in the future for that use—and not when the product is no longer manufactured for the relevant use—is without merit. TSCA's "conditions of use" definition plainly addresses conditions of use of chemical substances that will be used or disposed of in the future, regardless of whether the substances are still manufactured for the particular use."

Id at 424.

47. The Court was well aware that its conclusion applied to asbestos, noting that "[f]or example, although asbestos is now infrequently used in making new insulation, it remains in place in previously installed insulation" (id. at 421) and that "future disposal of asbestos insulation . . . unambiguously falls within TSCA's definition of 'conditions of use'" (id. at 424).

48. The Trump EPA issued its FRE for asbestos on December 30, 2020 and announced its availability in the Federal Register on January 4, 2021. 86 Federal Register 89. Described by EPA as a "Part 1" evaluation, the FRE did not address the health impacts of legacy asbestos uses and associated disposal. The Agency stated its intent to conduct a future "Part 2" evaluation focused on legacy asbestos but provided no specifics about how it would be conducted and failed to set a schedule for completing it.

**CLAIM FOR RELIEF**

49. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 49 as if fully set forth herein.

50.     In a suit by "any person," TSCA section 20(a)(2) authorizes the Court, "to compel the Administrator to perform any act or duty under this Act which is not discretionary."

51.     Under section 20(b)(2), to invoke this remedy, the plaintiff must give notice to the Administrator of the alleged failure to carry out a mandatory act or duty at least 60 days before commencing a civil action.

52.     Plaintiffs complied with this notification requirement in a letter to defendants dated January 26, 2021.

53.     In section 6(b)(4)(A) of TSCA, Congress directed that EPA "*shall* conduct risk evaluations . . . to determine whether a chemical substance presents an unreasonable risk of injury to health or the environment . . . *under the conditions of use*" (emphasis added).

54.     Under the Ninth Circuit decision holding that use and disposal of legacy asbestos are "conditions of use" as defined in TSCA, EPA has a non-discretionary obligation to determine whether these activities present an unreasonable risk of injury to human health and the environment.

55.     Section 6(b)(4)(G) provides that EPA "*shall* complete a risk evaluation . . . not later than 3 years after the date on which [it] initiates the risk evaluation" (emphasis added). The Agency "may extend the deadline for a risk evaluation for not more than 6 months."

56.     With this extension, the deadline for completing the asbestos evaluation was June 19, 2020.

57.     By failing to evaluate the risks of use and disposal of legacy asbestos, defendants violated their non-discretionary duty under section 20(a)(2) to complete a full asbestos risk evaluation in accordance with TSCA by this deadline.

### **REQUEST FOR RELIEF**

WHEREFORE, plaintiffs respectfully request judgment in their favor and against defendants upon their claims and, further, request that this Honorable Court enter judgment against defendants:

(1) Declaring that (i) defendants were required by TSCA complete a complete evaluation

of the health risks of asbestos under its conditions of use, including the use and disposal of "legacy asbestos" previously installed in buildings, by June 19 2020, (ii) defendants did not carry out this obligation as required by TSCA, and (iii) defendants therefore failed to perform an act or duty under TSCA which is non-discretionary within the meaning of section 20(a)(2);

(2) Ordering defendants to complete the asbestos risk evaluation as required by TSCA by addressing the health risks of the use and disposal of legacy asbestos;

(3) Setting enforceable deadlines for determining the scope of this risk evaluation as required by section 6(b)(4)(D) and issuing a draft and final evaluation in accordance with section 6(b)(4)(G);

(4) Awarding plaintiffs their costs of suit and reasonable fees for attorneys and expert witnesses in this action pursuant to 15 U.S.C. § 2619(c)(2); and

(5) Granting plaintiffs such further and additional relief as the Court may deem just and proper.

Respectfully submitted this 18th day of May 2021.

LOZEAU DRURY LLP

_____
RICHARD TOSHIYUKI DRURY
1939 Harrison Street, Suite 150
Oakland, CA  94612

ROBERT M. SUSSMAN
SUSSMAN & ASSOCIATES
3101 Garfield Street, NW
Washington, DC 20008
(202) 716-0118
*Attorneys for Plaintiffs*